J-S65011-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: INVOLUNTARY TERMINATION OF: C.J.S. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: G.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1232 MDA 2019 |

Appeal from the Decree Entered June 25, 2019
In the Court of Common Pleas of Lebanon County Orphans' Court at
No(s):  2019-239

BEFORE:   PANELLA, P.J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.:                    **FILED JANUARY 31, 2020**

G.S. ("Mother") appeals from the decree entered June 25, 2019, that granted the petition of Lebanon County Children and Youth Services ("CYS"), and involuntarily terminated her parental rights to her son, C.J.S. (born September 2017) ("Child" or the "Minor Child").[1]  Mother's court-appointed counsel has filed with this Court a motion for leave to withdraw as counsel and a brief pursuant to **Anders v. California**, 87 S. Ct. 1936 (1967), **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009), and **In re V.E.**, 611 A.2d 1267, 1275 (Pa. Super. 1992) (extending **Anders** briefing criteria to appeals by indigent parents represented by court-appointed counsel in

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The decree also involuntarily terminated the parental rights of Child's father, Z.G. ("Father").  Father did not appeal from the decree, nor has he participated in this appeal.

involuntary termination matters). We grant counsel's motion to withdraw and affirm.

The orphans' court set forth the factual and procedural history of this matter as follows:

> The Minor Child was born [i]n September [] 2017. Lebanon County Children & Youth Services (herein "CYS") became involved at the time of birth after receiving reports the Minor Child was born addicted to heroin and of Mother's daily heroin use during pregnancy. The report stated Mother had used heroin up until the day before the child was born. CYS took custody of the Minor Child at birth. The Minor Child tested positive for opioids and amphetamines at the time of birth. Elizabeth Getch, casework[er] for CYS, testified that Father was notified of the Minor Child's birth but Father indicated he was unable to take the Minor Child because he had another child who was close in age and did not feel he could care for both children. The Minor Child was released from the Hershey Medical Center and placed with a foster family on November 1, 2017.
>
> Ms. Getch met with Mother and Father on November 13, 2017, to establish goal plans. The [c]ourt heard testimony during the termination hearing about Mother's goals and progress completing these goals. Mother's first goal was to maintain regular visits with the Minor Child. The visits were to be one hour supervised visits at the courthouse. In 2017, there were six (6) possible visits with the Minor Child, but Mother only attended one visit. In 2018, there were forty-six (46) possible visits with the Minor Child, but Mother only attended nine visits. In 2019, there were [a] total of nineteen (19) possible visits, but Mother only attended sixteen (16) visits. Mother has given the Minor Child three gifts including a book with a handwritten note, a small guitar with wire strings and a small keyboard, and a Christmas gift in 2017. Mother was provided $50.00 for each visit attended to reimburse her for travel expenses as she does live two hours away from Lebanon County.
>
> These visits were very difficult for the Minor Child. He would cry when dropped off. Throughout the visits, he would often go to the door and call for his foster mother whom he called

"Mommy."   Mother was very appropriate for all of her visits. Mother would change diapers for the Minor Child and soothe him if he was upset.  Mother testified that at the last visit in June 2019, the Minor Child did not ask for his "Mom" or cry during the visit. Mother indicated that he even wanted to stay in the visitation room at the end of the visit.  Mother also testified that she and the Minor Child do have a bond and he sometimes calls her "Mommy."

Orphans' Court Opinion, 8/19/19, at 3-5 (citations to the record omitted).

In addition to visitation, Mother's goals included meeting and cooperating with CYS, including informing CYS of her contact information; signing releases; paying support through the Domestic Relations Office; attending and participating in Child's medical appointments; completing a budgeting course and a parenting class; completing a drug and alcohol and mental health evaluation; obtaining and maintaining stable housing for six months; maintaining stable employment; and submitting to random drug testing.  *See id.* at 5-7.

Mother made some progress with respect to her goals, as she maintained contact with CYS, completed a drug and alcohol and mental health evaluation, submitted negative drug tests, and maintained stable employment.  *See id.*  However, Mother did not complete a budgeting course or parenting class, had a small arrearage for her support payments, and failed to maintain stable housing.  *See id.*  Additionally, Mother's visits were sporadic and she did not attend Child's medical appointments.  *See id.* at 4-5.

On April 3, 2019, CYS filed a petition to involuntarily terminate the parental rights of Mother and Father to Child.[2] On June 24, 2019, the orphans' court conducted an evidentiary hearing on the petition. CYS presented the testimony of Kimberly Miller, a paralegal employed by CYS; Elizabeth Getch, a CYS case supervisor; and Alex Ridley, an employee of Families United Network. Mother testified on her own behalf.

On June 25, 2019, the orphans' court entered the decree involuntarily terminating Mother's parental rights.[3] Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal. On October 7, 2019, Mother's counsel, Justin C. Gearty, Jr., Esquire, filed an **Anders** brief and, on November 4, 2019, a motion for leave to withdraw as counsel, which we must address before reviewing the merits of this appeal.

When faced with a purported **Anders** brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw. **Commonwealth v. Goodwin**, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*). Prior to withdrawing as counsel on direct appeal under **Anders**, counsel must file a brief that meets the requirements established by the Pennsylvania Supreme Court in **Santiago**, namely:

---

[2] The orphans' court appointed Attorney Matthew Karinch as legal counsel for Child. **See** Order, 4/3/19.

[3] In its opinion, the orphans' court suggests that it terminated Mother's parental rights pursuant to Section 2511(a)(1), (5), and (b). **See** Orphans' Court Opinion, 8/19/19, at 9-13.

- 4 -

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

Counsel also must provide a copy of the **Anders** brief to his client. Attending the brief must be a letter that advises the client of his right to: "(1) retain new counsel to pursue the appeal; (2) proceed pro se on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the **Anders** brief." **Commonwealth v. Nischan**, 928 A.2d 349, 353 (Pa. Super. 2007), *appeal denied*, 594 Pa. 704, 936 A.2d 40 (2007).

**Commonwealth v. Orellana**, 86 A.3d 877, 879-880 (Pa. Super. 2014).

After determining that counsel has satisfied these technical requirements of **Anders** and **Santiago**, only then may this Court "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." **Commonwealth v. Flowers**, 113 A.3d 1246, 1250 (Pa. Super. 2015) (citations and footnote omitted).

Instantly, Mother's counsel filed a motion to withdraw and **Anders** brief that comply with the foregoing procedural requirements. Accordingly, we next proceed to review the issues outlined in the **Anders** brief. Counsel's **Anders** brief presents the following issue: ". . . whether the [l]ower [c]ourt's

termination of parental rights is supported by the record and has given

consideration for the welfare of the [c]hild[?]" ***Anders*** brief at 3.

We review these claims mindful of our well-settled standard of review:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks

omitted).

Termination of parental rights is governed by Section 2511 of the

Adoption Act, 23 Pa.C.S.A. § 2101-2938, which requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

***In re L.M.***, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the orphans' court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (5), and (b). This Court may affirm the orphans' court's decision regarding the termination of parental rights with regard to any one subsection of Section 2511(a), as well as Section 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we will focus our analysis on Section 2511(a)(1) and (b), which provides as follows:

> **(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> > * * *
>
> **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

We first examine the court's termination of Mother's parental rights under Section 2511(a)(1). We have explained this Court's review of a

challenge to the sufficiency of the evidence to support the involuntary

termination of a parent's rights pursuant to Section 2511(a)(1) as follows:

> To satisfy the requirements of Section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,
>
>> Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.
>>
>> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (internal citations

omitted).

As it relates to the crucial six-month period prior to the filing of the

petition, this Court has instructed:

> [I]t is the six months immediately preceding the filing of the petition that is most critical to our analysis. However, the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provisions, but instead consider the individual circumstances of each case.

*In re D.J.S.*, 737 A.2d 283, 286 (Pa. Super. 1999) (citations omitted). This

requires the Court to "examine the individual circumstances of each case and

consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination." ***In re B., N.M.***, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005) (citation omitted).

Regarding the definition of "parental duties," this Court has stated:

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with . . . her physical and emotional needs.

***In re B., N.M.***, 856 A.2d at 855 (internal citations omitted).

In terminating Mother's parental rights pursuant to Section 2511(a)(1), the orphans' court credited testimony that Mother visited Child only occasionally, and failed to send letters or cards, with the exception of three gifts. *See* Orphans' Court Opinion, 8/19/19, at 11. The court concluded that Mother did not make any effort to bond with Child or establish a relationship with him. *See id.* Further, the court observed that Mother failed to attend any medical appointments for Child and only inquired about Child's well-being four times. *See id.* While the court noted that Mother asserted the lengthy drive was the main reason for failing to attend visits and medical appointments, the court did not find this excuse valid. *See id.* at 12. Further, the court credited testimony that Mother failed to build a lifestyle suitable for the care of Child and did not prioritize Child. *See id.* The court concluded, "Mother has not shown any more than a passive interest in the Minor Child." *See id.* at 11.

The record supports the orphans' court's conclusion. Getch testified that CYS involvement began shortly after Child's birth, as Mother reported daily heroin use continuing until the day before Child was born. *See* N.T., 6/24/19, at 8. At birth, Child tested positive for opioids and amphetamines. *See id.* Upon Child's release from the hospital, CYS placed Child with his current foster family. *See id.* at 9. Child was adjudicated dependent on November 20, 2017.

CYS implemented a permanency plan. *See id.* at 9-10. Mother made some progress with respect to the plan, particularly with regard to drug use,

as Getch testified that there were no current concerns about substance abuse. *See id.* at 31. Mother was also employed for two years as a waitress. *See id.* at 27. However, Mother did not complete budgeting or parenting classes. *See id.* at 12-13.

Further, Mother's attendance at her one-hour supervised visits was initially poor, although it was improving at the time of the termination hearing. *See id.* at 10. In 2017, Mother attended 1 out of 6 possible visits. *See id.* In 2018, Mother attended 9 out of 46 visits, and, in 2019, Mother attended 16 out of 19 visits. *See id.* Mother's increase in visits in 2019 corresponded with CYS offering a $50.00 reimbursement for each visit. *See id.* at 26-28. At the visits, Mother engaged appropriately with Child; however, Child would cry when dropped off at the visitation room, and would go to the door to request "Mommy." *See id.* at 24, 34. During Child's time in care, Mother gave Child one book with a handwritten note as well as two small instruments. *See id.* at 15. For Christmas of 2017, Mother gave Child an age appropriate gift. *See id.*

With respect to Child's medical care, Mother did not attend any medical appointments. *See id.* at 11. Ridley testified that she contacted Mother once per month by phone or letter about upcoming medical appointments for Child. *See id.* at 40. Mother never answered the phone or called Ridley back after the medical appointments to learn what transpired. *See id.* at 40-42. Similarly, Mother never responded to Ridley's efforts to update her individual service plan. *See id.* at 41.

Mother testified that she had achieved ten months of sobriety and lived in a private sober house. *See id.* at 44-45. Mother attended drug testing every two weeks and every test was negative. *See id.* at 45-46. Mother asserted that she failed to attend Child's medical appointments because of a lack of transportation. *See id.* at 47. Further, Mother testified that she could finish her parenting and budgeting programs in the near future and had begun looking for appropriate housing. *See id.* at 47-48, 52, 57-58. Mother requested additional time to reunite with Child. *See id.* at 49.

Upon review, we discern no abuse of discretion and do not disturb the orphans' court's findings and determinations. CYS filed the petition to involuntarily terminate Mother's parental rights on April 3, 2019. The record confirms that the orphans' court's did not abuse its discretion in concluding that Mother failed or refused to perform parental duties with regard to Child for a period of at least six months immediately preceding the filing of the petition. Further, the orphans' court's termination of Mother's parental rights under Section 2511(a)(1) is supported by competent, clear and convincing evidence.

We next consider whether the orphans' court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(b). The requisite analysis is as follows.

> . . . . Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act.

Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting

*In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (quotation marks and

citations omitted).

The orphans' court found that termination of Mother's parental rights

best met Child's needs and welfare, reasoning:

> Finally, it is in the Minor Child's best interest to remain in his current placement. The Minor Child has lived his entire life in his current foster home. He has never lived with Mother or had regular contact with Mother. Throughout these twenty-one (21) months in care, the Minor Child has grown extremely close with his foster parents and considers them his "Mom". The foster parents have shown a commitment to the Minor Child's welfare and are able to provide the stable, loving environment he needs. The foster parents are planning to adopt the Minor Child.

Orphans' Court Opinion, 8/19/19, at 12.

The record supports the orphans' court's decision to involuntarily

terminate Mother's parental rights pursuant to Section 2511(b). Getch

- 13 -

testified that Child has lived with his foster parents his entire life, and is doing well in their home. *See* N.T., 6/24/19, at 22. The foster parents take Child to his medical appointments and provide Child a consistent schedule and supportive environment. *See id.* at 22-23. Getch noted that Child refers to both of his female foster parents as "mom." *See id.* at 22. Getch anticipated that, if Mother's parental rights were terminated, Child would be adopted by his foster parents. *See id.* at 21. Getch opined that it was in Child's best interest to remain with his foster parents. *See id.* at 35.[4]

The credited testimony supports the orphans' court's determination that it would best serve the needs and welfare of Child to involuntarily terminate Mother's parental rights pursuant to Section 2511(b). Preserving Mother's parental rights would serve only to deny Child the permanence and stability to which he is entitled. *See In re Adoption of C.D.R.*, 111 A.3d at 1220 ("Clearly, it would not be in [the child's] best interest for his life to remain on hold indefinitely in hopes that Mother will one day be able to act as his parent."). Accordingly, the orphans' court did not err in terminating Mother's parental rights to Child pursuant to Section 2511(b).

---

[4] Mother testified that it was hard to get to know Child based on her limited visitation, acknowledging that Child cries when one of the foster mothers leaves the room. *See* N.T., 6/24/19, at 46-47. However, Mother also testified that Child now runs in to visits by himself, and that she shares a bond with Child who sometimes refers to her as "mommy." *See id.*

Based on the foregoing independent analysis of the orphans' court's termination of Mother's parental rights, we agree with counsel for Mother that the within appeal is wholly frivolous.[5]  As such, we affirm the decree of the orphans' court, and grant counsel's motion to withdraw.

Decree affirmed.  Motion to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/31/2020

---

[5] Further, we note that our independent review of the record did not reveal any additional, non-frivolous issues overlooked by counsel.  ***See Commonwealth v. Flowers***, 113 A.3d at 1250.